EXHIBIT 1

SUMMONS, SECOND AMENDED COMPLAINT, AND
ACKNOWLEDGMENT OF SERVICE

**SUMMONS**

Attorney(s) _Day Pitney LLP-Alyssa R. Musmanno, Esq._

Office Address _One Jefferson Road_

Town, State, Zip Code _Parsippany, NJ 07054_

Telephone Number _(973) 966-6300_

Attorney(s) for Plaintiff

_Certain Underwriters at Lloyd's, London, et. als._

Plaintiff(s)

Vs.

_North River Insurance Company, United States Fire_

_Insurance Company, and Banco de Seguros Del Estado_

Defendant(s)

# Superior Court of New Jersey

_MORRIS_ COUNTY

_Civil (Law)_ DIVISION

Docket No: _MRS-2505-18_

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ  08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith

Clerk of the Superior Court

DATED: _08/13/2019_

Name of Defendant to Be Served: _Banco de Seguros Del Estado_

Address of Defendant to Be Served: _150 S Wacker Drive, Floor 17, Chicago, IL 60606_

Revised 11/12/2014, CN 10792-English (Appendix XII-A)

DAY PITNEY LLP
ONE JEFFERSON ROAD
PARSIPPANY, NEW JERSEY 07054-2891
(973) 966-6300
by Elizabeth J. Sher, Esq.
Attorney I.D. No. 030601983
Attorneys for Plaintiffs

--------------------------------------------------------------- x

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, TENECOM LIMITED f/k/a YASUDA FIRE & MARINE INSURANCE COMPANY (UK) LIMITED, WINTERTHUR SWISS INSURANCE COMPANY, SOMPO HOLDINGS, INC. f/k/a SOMPO JAPAN INSURANCE, INC. f/k/a NISSAN FIRE & MARINE INSURANCE COMPANY, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY f/k/a STONEWALL INSURANCE COMPANY, ALLIANZ SUISSE VERSICHERUNGS-GESELLSCHAFT f/k/a HELVETIA ACCIDENT SWISS INSURANCE COMPANY, and DELTA LLOYD SCHADEVERZEKERING NV | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY DOCKET NO. MRS-L-2505-18 Civil Action **SECOND AMENDED COMPLAINT AND JURY DEMAND** **[REDACTED VERSION]** |

Plaintiffs,

-against-

THE NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and BANCO DE SEGUROS DEL ESTADO

Defendants.

--------------------------------------------------------------- x

The plaintiffs, Certain Underwriters at Lloyd's, London ("Underwriters"), London, Tenecom Limited f/k/a Yasuda Fire & Marine Insurance Company (UK) Limited, Winterthur Swiss Insurance Company, Sompo Holdings, Inc. f/k/a Sompo Japan Insurance, Inc. f/k/a Nissan Fire & Marine Insurance Company, Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company, Allianz Suisse Versicherungs-Gesellschaft f/k/a Helvitia Accident Swiss Insurance Company, and Delta Lloyd Schadeverzekering NV (together, the "Plaintiff Reinsurers" or the "Plaintiffs") file this Second Amended Complaint for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing and Declaratory Judgment arising out of certain facultative reinsurance agreements entered into with the Insurer-Defendants, The North River Insurance Company ("North River") and United States Fire Insurance Company ("U.S. Fire") (together, the "Insurer-Defendants"), and allege, upon knowledge as to themselves and their own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action seeks damages and other compensatory and equitable relief in connection with certain agreements entered into by the parties.

2.      Under the parties' reinsurance agreements, the Plaintiffs agreed, under certain circumstances and subject to the terms, conditions and limits of these reinsurance agreements, to indemnify the Insurer-Defendants for loss payments made under insurance policies issued to Mine Safety Appliances Company ("MSA" or "Mine Safety"), which are subject to the reinsurance agreements and only after the Insurer-Defendants have proved the loss.

3.      The Insurer-Defendants, however, have billed the Plaintiffs for a number of payments on account of claims tendered by MSA, but for which the Plaintiffs are not obligated to indemnify the Insurer-Defendants.

4.      The Insurer-Defendants have billed the Plaintiffs in 2017 ("2017 Reinsurance Billings"), and in 2018 ("2018 Billings"), for amounts they purport to have paid MSA in indemnity under certain policies they issued to MSA.

5.      The Insurer-Defendants have breached their obligations to the Plaintiffs in how they settled the underlying dispute with MSA, allocated their settlement payment, and then billed their settlement payments under the reinsurance agreements.

6.      The Insurer-Defendants have acted in bad faith in how they handled the underlying coverage dispute with MSA, settled that dispute, allocated their settlement payment, and then presented and billed it to their reinsurers, and in their dealings with their reinsurers generally.

7.      The Plaintiffs bring this action to address the Insurer-Defendants' breaches and bad faith conduct, for declaratory relief as to the parties' obligations under their agreements, and for such other relief to which they are entitled.

## **THE PARTIES**

8.      The plaintiffs Underwriters are individuals who are members of underwriting syndicates based in London, United Kingdom, who subscribed to the reinsurance contracts at issue in this case.  Upon information and belief, the Underwriters involved in this action reside in numerous international and domestic jurisdictions.

9.      The plaintiff Tenecom Limited, formerly known as Yasuda Fire & Marine Insurance Company (UK) Limited ("Tenecom"), is a company organized under the laws of the United Kingdom with its principal place of business in London, United Kingdom.

10.     The plaintiff Winterthur Swiss Insurance Company ("Winterthur") is a company organized under the laws of Switzerland with its principal place of business in Switzerland.

11.     The plaintiff Sompo Holdings, Inc., formerly known as Sompo Japan Insurance, Inc., formerly known as Nissan Fire & Marine Insurance Company ("Sompo"), is a company organized under the laws of Japan with its principal place of business in Tokyo, Japan.

12.     The plaintiff Berkshire Hathaway Specialty Insurance Company, formerly known as Stonewall Insurance Company ("Berkshire"), is a company organized under the laws of Nebraska with its principal place of business in Omaha, Nebraska.

13.     The plaintiff Allianz Suisse Versicherungs-Gesellschaft f/k/a Helvitia Accident Swiss Insurance Company ("Allianz Suisse") is a company organized under the laws of Switzerland, with its principal place of business in Zurich, Switzerland.

14.     The plaintiff Delta Lloyd Schadeverzekering NV ("Delta Lloyd") is a company organized under the laws of the Netherlands, with its principal place of business in Amsterdam, the Netherlands.

15.     The Insurer-Defendant North River is a corporation organized under the laws of New Jersey and maintains its principal place of business in Morristown, New Jersey.

16.     The Insurer-Defendant U.S. Fire is a corporation organized under the laws of Delaware and maintains its principal place of business in Morristown, New Jersey.

17.     The Insurer-Defendants, North River and U.S. Fire, are part of the same corporate family of insurance companies and have acted in all regards relevant to this dispute through a common third-party administrator, RiverStone Claims Management LLC ("RiverStone"). RiverStone is not a defendant to this Complaint.

18.     The defendant Banco de Seguros del Estado ("Banco")  is a statutory corporation wholly owned by the sovereign Oriental Republic of Uruguay, and has its principal place of business in Montevideo, Uruguay.

## JURISDICTION AND VENUE

19.     This court has jurisdiction over the parties and the claims at issue in this matter because the Insurer-Defendants have their principal places of business located within the State of New Jersey and because defendant Banco entered into a reinsurance contract with defendant North River, a New Jersey resident, that includes a service of suit clause consenting to the jurisdiction of any court of competent jurisdiction within the United States.  This court has jurisdiction over claims asserted against Banco, an instrumentality of a foreign sovereign, pursuant to 28 U.S.C.A. § 1605(a).

20.     Venue is proper in Morris County pursuant to R. 4:3-2 because the Insurer-Defendants have their principal places of business in Morris County.

## BACKGROUND

21.     Reinsurance is a type of contract for indemnity by which an insurer transfers to a reinsurer some or all of the risk that the insurer assumed under one or more insurance policies subject to the terms, conditions, and limits of a reinsurance agreement which governs the relationship between the parties.

22.     The original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk and premium to the reinsurer.  In this case, North River and U.S. Fire, as the cedents, transferred certain risks discussed below to the Plaintiff Reinsurers and Banco, who were among their reinsurers, subject to the terms, conditions and limits of the reinsurance agreements entered into by the parties.

23.     The reinsurance that the Plaintiff-Reinsurers and Banco (together, the "Reinsurers") provided to North River is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk.

5

### The "JU Program" and the Relevant Reinsurance Contracts

24.      With one exception, this dispute involves reinsurance agreements that were issued as part of a specialized insurance and reinsurance program known as the Joint Underwriting Program (the "JU Program").

25.      The JU Program was a "fronting" program under which umbrella and excess insurance coverage was issued to US-based policyholders by a US-based insurer, but largely reinsured by London-based reinsurers who retained complete underwriting and claims authority under the JU Program.

26.      During the period 1972 through 1984, North River fronted the JU Program through L.W. Biegler ("LWB") organization as managing general agent.

27.      During that same time period, the H.S. Weavers (Underwriting) Agencies, Ltd. ("Weavers") was responsible for acting as the lead reinsurer and claim handler under the JU Program.

28.      Under the JU Program during this time period, insurance policies would be issued on North River paper, but the policyholder, North River, and the brokers all understood that the London-based reinsurers would make all underwriting and claims decisions through Weavers.

29.      In the 1990s, Underwriters assumed claims control from Weavers for all policies issued through the JU Program.

30.      There were 11 North River policies issued to MSA under the JU Program between August, 1972, and April, 1985, totaling over $200 million in annual limits (the "JU Policies").

31.      At the time that the policies were issued to it, MSA had its principal place of business in Pittsburgh, Pennsylvania.

32.      North River placed this insurance program through the intermediary Johnson & Higgins of Pennsylvania, which was also based in Pittsburgh, Pennsylvania.

33.      Consistent with the JU Program, the JU Policies issued to MSA were each the subject of facultative reinsurance agreements reinsured by London-based reinsurers.

34.      North River entered into facultative reinsurance agreements with various reinsurers, including the Plaintiff Reinsurers and Banco, reinsuring a specified amount of the JU Policies issued to MSA.  North River and the reinsurers memorialized these reinsurance arrangements for the JU Policies in various writings referred to as "slips." Collectively, these reinsurance contracts are referred to herein as the JU Reinsurance Contracts.

35.      The Reinsurers' respective participations under the JU Reinsurance Contracts varied from year to year.  Each of the Reinsurers is responsible only for their individual respective share of covered loss for their own part and not for any share on account of another reinsurer.  Not every Reinsurer participated on every JU Reinsurance Contract.

36.      The relevant coverage that North River provided to MSA under the JU Policies, and the total amounts ceded to the Plaintiff Reinsurers under each of the JU Reinsurance Contracts for the relevant time periods, are listed below:

| Time Period | MSA Policy No. | Reinsurance Contract No. | Limits and Retentions | Total Amounts Ceded to the Plaintiff Reinsurers |
|---|---|---|---|---|
| **Lower Layer JU Policies** | | | | |
| Jan. 1, 1976 - April 1, 1978 | JU0139 | UL19290 | $3.75M part of $5M excess $5M excess primary or SIR | 31.093% of $3.75M part of $5M |
| April 1, 1979 - April 1, 1980 | JU0653 | UP26187 | $5.25M part of $15M excess $5M excess primary or SIR | 12.990% of $5.25M part of $15M |
| April 1, 1980 - April 1, 1981 | JU0830 | UQ27678 | $10M part of $20M excess $5M excess primary or SIR | 20.5375% of $8M part of $10M part of $20M |
| April 1, 1981 - April 1, 1982 | JU0988 | UR27678 | $10M part of $20M excess $5M excess | 18.447% of $8M part of $10M part of |

7

| | | | | |
|---|---|---|---|---|
| | | | primary or SIR | $20M |
| April 1, 1982 - April 1, 1983 | JU1123 | US27678 | $10M part of $20M excess $5M excess primary or SIR | 18.447% of $8M part of $10M part of $20M |
| April 1, 1983 - April 1, 1984 | JU1225 | UT2768 | $20M excess $5M excess primary or SIR | 23.360% of $13M part of $20M |
| April 1, 1984 - April 1, 1985 | JU1319 | UU27678 | $20M excess $5M excess primary or SIR | 1.482% of $13M part of $20M |
| **Higher Layer JU Policies** | | | | |
| April 1, 1976 - April 1, 1979 | JU0157 | UL19829 | $8M part of $10M excess $20M excess of primary or SIR | 50.043% of $8M part of $10M |
| April 1, 1976 - April 1, 1979 | JU0171 | UL20163 | $2M part of $10M excess $30M excess primary or SIR | 96.296% of $2M part of $10M |
| April 1, 1973 - April 1, 1976 | JU0010 | UH32647 | $15M excess $50M excess primary or SIR | 69.127% of $13,000,500 part of $15M |
| April 1, 1976 - April 1, 1979 | JU0158 | UL19830 | $12.75M part of $15M excess $50M excess primary or SIR | 67.672% of $10.75M part of $12.75M part of $15M |

37.     Underwriters, Tenecom, Winterthur, Sompo, Berkshire, and Delta Lloyd (the "JU Reinsurers") and Banco each participated on at least one of the JU Reinsurance Contracts.  The amounts ceded to each of the JU Reinsurers under each of the JU Reinsurance Contracts for the relevant time periods are separately listed in Appendix A.

38.     Reference below to the "JU Reinsurers" with respect to the JU Reinsurance Contracts is intended and should be construed to refer solely to those of the JU Reinsurers who participated on the JU Reinsurance Contracts discussed.

39.     The term "Lower Layer JU Policies" as used in this Complaint refers to the following policies:  JU00139, JU00653, JU00830, JU00988, JU01123, JU01225, and JU01339.

40.     Each of the Lower Layer JU Policies attach excess of $5 Million dollars, excess of underlying primary coverage.

41.     In total, the Lower Layer JU Policies provide $82.75 million limits.

8

42.     The term "Higher Layer JU Policies" as used in this Complaint refers to the following policies:  JU00157, JU00171, JU00010, and JU00158.

43.     The JU Reinsurance Contracts were entered into by the parties in the United Kingdom, where the Reinsurers subscribed to the JU Reinsurance Contracts by signing onto the slips in London, United Kingdom.

44.     Consistent with the overall purpose of the JU Program, the terms of the JU Reinsurance Contracts did not provide that North River would have claims control; instead the JU Reinsurance Contracts gave the reinsurers sole control of the settlement, negotiation, and adjustment of all claims tendered to the MSA Policies, including the appointment of legal counsel to defend any coverage action.

45.     The JU Reinsurance Contracts are "losses occurring" contracts that only obligate the JU Reinsurers to indemnify against such loss that occurs during the specified period of reinsurance.

46.     The JU Reinsurance Contracts only obligate the JU Reinsurers "to pay or make good to the Reinsured all such Loss as aforesaid that may happen to be the subject matter of this Reinsurance, or any part therefore during the continuance of this Policy; not exceeding 100% of the liability accepted by the Reinsured Policy" or "not exceeding the Sum referred to in the Slip," with "such payment to be made after such Loss is proved."

47.     In other words, under the terms of the JU Reinsurance Contracts, the amount paid by the JU Reinsurers on account of Loss under the reinsured policies that occurred during the reinsurance period, and the JU Reinsurers are not obligated to pay more than each of their individual share of the sum insured or S/I amount (the "Sum Insured") specified in each of the JU Reinsurance Contracts.

48.     The JU Reinsurance Contracts only obligate the JU Reinsurers to pay Loss when such Loss during the reinsurance period exceeds each of the Contract's stated retentions.

49.     Further, the JU Reinsurers are not obligated to make any payment until North River proves it has suffered a Loss covered by the reinsured policy.

50.     The JU Reinsurance Contracts do not include or incorporate a "follow the settlements" or "follow the fortunes" provision.

51.     North River also issued a policy to MSA which is involved in this dispute, but which is not part of the JU Program, bearing Policy no. 5220518409 covers the period from April 1, 1985, through April 1, 1986 (the "Non-JU North River Policy").

52.     The Plaintiff Reinsurers and, upon information and belief, Banco, did not reinsure the Non-JU North River Policy.  The Non-JU North River Policy provides the following:

| Time Period | MSA Policy No. | Reinsurance Contract No. | Limits and Retentions | Amounts Ceded to Reinsurers |
|---|---|---|---|---|
| **April 1, 1985 – April 1, 1986** | -8409 | N/A | $4M excess $20M excess primary or SIR | 0.00% |

53.     U.S. Fire also issued a policy to MSA which is involved in this dispute, bearing policy no. XSO002526 and providing coverage from August 28, 1972 through April 1, 1976 (the "U.S. Fire Policy").

54.     The JU Policies, the Non-JU North River Policy, and the U.S. Fire Policy are referred to collectively herein as the "MSA Policies."

55.     U.S Fire reinsured Policy No. XSO002526 through facultative reinsurance that it placed with London reinsurers, including Underwriters, Allianz Suisse, and Delta Lloyd, through facultative reinsurance contract UG131911 (the "U.S. Fire Reinsurance Contract").

56.     The U.S. Fire Reinsurance Contract was entered into by the parties in London, United Kingdom, where Underwriters, Winterthur, Allianz Suisse, and Delta Lloyd the ("U.S. Fire Reinsurers") subscribed to the U.S. Fire Reinsurance Contract by signing onto the slips for that contract in London, United Kingdom.

57.     The relevant coverage that U.S. Fire provided to MSA under the U.S. Fire Policy No. XS 2526, and the total amounts ceded to the U.S. Fire Reinsurers under the U.S. Fire Reinsurance Contract are as follow:

| Time Period | MSA Policy No. | Reinsurance Contract No. | Limits and Retentions | Amounts Ceded to the Reinsurers |
|---|---|---|---|---|
| **August 28, 1972 – April 1, 1976** | XS2526 | UG131911 | $10M excess $20M excess primary or SIR | 51.790% of $10M |

58.     The amounts ceded to each of the U.S. Fire Reinsurers under the U.S. Fire Reinsurance Contract for the relevant time periods are separately listed in Appendix A.

59.     The U.S. Fire Reinsurance Contract is a "losses occurring" contract that only obligates Underwriters, Allianz Suisse, and Delta Lloyd to indemnify against such loss that occurs during the specified period of reinsurance.

60.     The U.S. Fire Reinsurance Contract only obligates the U.S. Fire Reinsurers "to pay or make good to the Reinsured all such Loss as aforesaid that may happen to the subject matter of this Reinsurance, or any part therefore during the continuance of this Policy; not exceeding 100% of the liability accepted by the Reinsured Policy, such payment to be made after such Loss is proved."

61.     In other words, under the terms of the U.S. Fire Reinsurance Contract, U.S. Fire's recovery from the reinsurers is capped, and it cannot recover more than the U.S. Fire Reinsurer's respective shares of the sum reinsured in the U.S Fire Reinsurance Contract.

62.     The U.S. Fire Reinsurance Contract only obligates the U.S. Fire Reinsurers to pay Loss when such Loss during the reinsurance period has exceeded the contract's stated retentions.

63.     Further, the U.S. Fire Reinsurers are not obligated to make any payment until U.S. Fire proves it has suffered a Loss under the U.S. Fire Policy No. XS 2526.

64.     The U.S. Fire Reinsurance Contract includes claims notice and claims cooperation provisions.

**The Underlying Claims and Coverage Disputes**

65.     MSA is an entity that manufactures and sells products for the protection of the health and safety of individuals in certain work environments, including air purifying respirators, protective body gear, and clothing.

66.     MSA became the subject of numerous lawsuits wherein claimants alleged that they became ill as a result of inhaling coal dust, asbestos and silica through allegedly defective MSA respirators or as a result of exposure to MSA's asbestos-containing products (collectively, "MSA Product Claims").

67.     MSA sought coverage from numerous insurers concerning the MSA Product Claims.

68.     MSA first tendered these claims to its primary and umbrella insurers.

69.     Upon exhaustion of its primary and umbrella insurance, MSA tendered the MSA Product Claims to its first level excess insurers.

70.     In 2006, MSA notified North River that the umbrella insurance policies underlying JU Policies No. JU00830, JU00988, and JU01123 were exhausted or nearly exhausted.

71.     At least as early as September, 2007, MSA began tendering the MSA Product Claims to North River under JU Policies No. JU00830, JU00988, and JU01123.

72.     At that time, North River's net exposure under JU Policies No. JU00830, JU00988, and JU01123 had increased since the time these policies had originally been issued.  This is because various reinsurers of these policies had either become insolvent or had agreed with North River a price to buy out of their responsibilities by commuting the applicable reinsurance contracts. Consequently, North River was required to stand in the shoes of those reinsurers.

73.     Whereas North River originally had retained less than 20% or less of the net risk under JU Policies No. JU00830, JU00988, or JU01123 when they had been issued, North River's net exposure had increased to approximately 80% under each of those policies.

74.     At least as early as September, 2007, MSA also began tendering claims to North River under Policy No. JU01225.

75.     At this time, North River's net exposure under JU Policy No. JU01225 had also increased since that policy had originally been issued. This is because various reinsurers of Policy No. JU01225 had either become insolvent or had agreed with North River a price to buy out of their responsibilities by commuting the applicable reinsurance contract and North River had to stand in the shoes of those reinsurers too.

76.     Whereas North River originally had retained less than 20% of the net risk when JU Policy No. JU01225 had been issued, North River's net exposure had increased to over 60% under this policy.

77.     MSA and North River became involved in numerous lawsuits concerning the scope of coverage for the MSA Product Claims provided under the insurance policies issued to MSA including the following coverage actions:

> a.  *Mine Safety Appliances Company v. The North River Insurance Company* in the Western District of Pennsylvania, Docket No. 2:09-cv-00348 (the "Pennsylvania Federal Court Action");

13

      b.   *Mine Safety Appliances Company v. The North River Insurance Company* in the Court of Common Pleas of Allegheny County, Pennsylvania, Case No. GD 10-7432 (the "Pennsylvania State Court Action"); and

      c.   *Mine Safety Appliances Company v. AIU Insurance Company, et al.*, in the Superior Court of the State of Delaware, Civil Action No. N10C-07-241 (the "Delaware Action").

### The Pennsylvania and Delaware Coverage Actions, North River Requests Full Claims Control, and North River's Reinsurance Updates

78.     In March, 2009, MSA instituted the Pennsylvania Federal Court Action.

79.     In the Pennsylvania Federal Court Action, MSA alleged that North River had breached its obligations under Policy No. JU01225 by failing to respond to the MSA Product Claims that MSA had tendered to that policy.

80.     Due to insolvencies and commutations, North River's net exposure under Policy No. JU01225 had increased since the time that that policy had been issued to MSA. As of September, 2009, North River's net exposure under Policy No. JU01225 had increased to over 60% of the policy's exposure.

81.     Because of its increased net exposure, North River had requested that Underwriters transfer claims control to North River, despite Underwriters having claims control under the JU Reinsurance Contract applicable to Policy No. JU01225.

82.     At North River's request, Underwriters agreed that North River could take the lead in defending the Pennsylvania Federal Court Action, subject to Underwriters' retaining the ability to veto North River's coverage decisions and strategy.

83.     In April, 2010, North River commenced the Pennsylvania State Court Action against MSA and Allstate Insurance Company, the successor to a co-insurer of MSA.

84.     The Pennsylvania State Court Action involved MSA Product Claims that MSA had tendered to and sought coverage from just three JU Policies: Policies No. JU00830, JU00988, and

JU01123.  According to North River, the only North River policies to which MSA had tendered MSA Product Claims at that time were Policies No. JU00830, JU00988, and JU01123 and MSA had assiduously avoided tendering any claims to the policy periods involving insolvent insurers, which included the years 1973 to 1979 in which the Higher Layer JU Policies and the U.S. Fire Policy provide coverage.

85.     As noted above, Policies No. JU00830, JU00988, and JU01123 provided annual coverage each of $10 million part of $20 million excess of $5 million and primary insurance/self-insured retentions for the period from April 1, 1980 through April 1, 1983.  The other $10 million part of the $20 million for each of these coverage towers or "sharing layers" was issued by Northbrook Insurance Company, to which Allstate was successor:  Policy No. 63 006 616 for the period 1980 to 1981, Policy No. 63 007 794 for the period 1981 to 1982, and Policy No. 63 008 595 for the period 1981 to 1982 (the "Northbrook Policies").  Both the North River JU Policies and Northbrook Policies in each of these sharing layers provided that they were subject to the same terms, definitions, exclusions, and conditions, except as otherwise expressly provided for, as contained in the respective underlying umbrella policy for each respective period of coverage.

86.     North River sought a declaration in the Pennsylvania State Court Action that it did not have any obligations to MSA under Policies No. JU00830, JU00988, and JU01123 for the MSA Product Claims that had been tendered.

87.     North River averred in its Complaint that Policies No. JU00830, JU00988, and JU01123 did not cover the MSA Product Claims.

88.     Among other things, North River contended in that action that MSA had not exhausted the underlying retentions of Policies No. JU00830, JU00988, and JU01123.

89.     MSA counterclaimed alleging that North River had breached those three contracts by not paying for the defense and settlement of the claims it had tendered to Policies No. JU00830, JU00988, and JU01123 and by failing to act in good faith and deal fairly with MSA.

90.     MSA's Counterclaim also asserted that North River violated Pennsylvania's statutory prohibition against insurer bad faith set forth in 42 Pa. C.S. §8371.

91.     In June, 2010, MSA instituted the Delaware Coverage Action.

92.     In the Delaware Coverage Action, MSA sought, among other things, a declaratory judgment concerning the obligation of various general liability policies, including all of the JU Policies, with respect to the MSA Product Claims.

93.     North River moved to stay the Delaware Coverage Action as to North River in favor of the Pennsylvania coverage actions.  Among other things, North River argued that MSA had no justiciable claim against any insurer excess of the North River/Northbrook shared layer covering the 1980-1983 time period – i.e., in excess of JU Policies No. JU00830, JU00988, and JU01123 – and that the only existing dispute was between MSA and its first-layer excess policies.  The Delaware Court granted the stay requested by North River in January, 2011.

94.     Later in 2010, North River requested that Underwriters give North River control to defend against MSA's claims for coverage under the JU Policies and give up their veto over coverage and strategy decisions.

95.     North River wanted claims control due to North River's high net participation under these policies.  In other words, North River wanted claims control because it had more of the financial exposure under the policies to which MSA had tendered the MSA Product Claims and were then at issue in the MSA coverage disputes.

16

96.     Underwriters agreed to an arrangement under which North River assumed control over the defense of MSA's claims against the JU Policies with both parties reserving all rights.

97.     At the time that it requested and assumed claims control, North River believed and represented to Underwriters that the main exposure it faced was under the Lower Layer JU Policies, including JU00830, JU00988, and JU01123.  North River did not believe that the main exposure it faced was under the Higher Layer JU Policies.  This was, in part, because the Higher Layer JU Policies had much larger retentions than the Lower Layer JU Policies and one of North River's principle coverage defenses against MSA's claims for coverage was that MSA had not exhausted the underlying retentions of each JU Policy.  Moreover, according to North River, at that time, MSA had assiduously avoided tendering any claims to the policy periods involving insolvent insurers, which included the years 1973 to 1979 in which the Higher Layer JU Policies and the U.S. Fire Policy provide coverage.

98.     ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████

99.     ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████

100.    U.S. Fire did not provide notice under the U.S. Fire Reinsurance Contract of the underlying disputes or that the U.S. Fire Policy faced any exposure from MSA's claims until 2017.

101.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

102.    ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

103.    Up until September, 2016, North River and U.S. Fire did not believe that the U.S. Fire Policy was part of what it believed was the main exposure to the MSA Product Claims.  Indeed, U.S. Fire did not provide notice under the U.S. Fire Reinsurance Contract of the MSA Product Claims until 2017.

104.    As of September, 2016, North River did not believe that any of the Higher Layer JU Policies were part of what it believed was the main exposure to the MSA Product Claims.  This was due in part to the fact that one of North River's main coverage defenses was that MSA could not prove exhaustion of the underlying retentions applicable to any of the JU Policies and this defense applied with more force to the Higher Layer JU Policies which have much larger retentions than the Lower Layer JU Policies.

105. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

### The Pennsylvania Jury Verdict and Bad Faith Award
### Against North River JU Policies No. JU00830, JU00988, and JU01123

106.     In 2016, MSA and North River went to trial in the Pennsylvania State Court Action

concerning MSA's claims for coverage under Policies No. JU00830, JU00988, and JU01123.

107.     In October, 2016, a jury found that North River had breached its contractual

obligations under Policies No. JU830, JU988, and JU1123 by failing to reimburse MSA for

settlement amounts and associated defense costs for MSA Product Claims that MSA had tendered

to those policies.

108.     The jury returned a verdict awarding MSA:

   a.   $9,415,940.57 under JU00830;

   b.   $1,183,606.14 under JU00988; and

   c.   $309,511.15 under JU01123.

109.     The jury also found that North River had breached its common law duty of good

faith and awarded $1 of bad faith damages against North River.

110.     In 2017, the Court in the Pennsylvania State Court Action conducted a bench trial

concerning MSA's claims against North River for insurer bad faith under 42 Pa. C.S. §8371 under

JU Policies No. JU00830, JU0988, and JU01123.

111.     In February 2017, the Court in the Pennsylvania State Court Action found that North

River had acted in bad faith in connection with MSA's claims for insurance coverage and awarded

MSA nearly $47 million in bad faith damages.  The Court later increased the total bad faith award to

approximately $49 million (the "Bad Faith Award").

19

112.    The jury verdict and Bad Faith Award were later reduced into a final judgment in the Pennsylvania State Court Action.

113.    The jury verdict, Bad Faith Award, and the judgment entered thereon were never vacated, withdrawn, or overturned on appeal.

114.    The jury verdict, Bad Faith Award, and judgment entered thereon are binding judgments against JU Policies No. JU00830, JU0988, and JU01123.

115.    North River is collaterally estopped from denying the legal effect of the jury verdict, Bad Faith Award, and judgment entered thereon with respect to its obligations under Policies No. JU00830, JU0988, and JU01123.

### North River's 2017 Payment to MSA and Reinsurance Billings

116.    Compelled by ongoing threats by MSA to seek additional extra-contractual damages, attorneys' fees and interest, North River elected to pay certain outstanding claims that MSA had previously tendered to them as of 2017.

117.    ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████.

118.    North River and U.S. Fire did not allocate that payment to their policies consistent with the manner in which MSA had tendered them to the insurance policies or with the rulings and judgment in the Pennsylvania State Court Action.

119.    Despite that it had a judgment rendered against JU00830, JU00988, and JU1123, North River did not allocate any of its payment to those policies.

120.    North River purportedly invoked a non-cumulation provision in some of the Lower Layer JU Policies to justify the allocation of some of its loss settlement payments into the Higher

Layer JU Policies, including JU00010 which sits excess of $50 million of coverage including $10 million of insolvent coverage and into the U.S. Fire Policy which sits excess of over $20 million.

121.    Based upon information and belief, in none of its reservation of rights letters to MSA before 2017 did North River raise the possible application of the non-cumulation provision to the MSA Product Claims.

122.    North River never asserted the non-cumulation provisions as an issue in its Complaint in the Pennsylvania State Court Action or in any of the briefing or trial submissions in that matter.

123.    North River and U.S. Fire billed their reinsurers, including the Plaintiff Reinsurers, based on this unreasonable allocation.

124.    Before 2017, North River never reported to the Plaintiff Reinsurers that it believed that the non-cumulation provision in the JU Policies applied to the MSA Product Claims.

125.    North River and U.S. Fire's allocation of their payment of these claims is inconsistent with their pre-2017 analysis of the exposure to their policies as RiverStone reported to the JU Reinsurers.

126.    North River and U.S. Fire's allocation of their payment of these claims was inconsistent with their prior reserve recommendations to the Plaintiff Reinsurers.

127.    ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████

128.    As explained below, the Delaware court would later rule inconsistently with North River's position as it relates to the non-cumulation provisions.

129.    Underwriters, Tenecom, Winterthur, Sompo and Berkshire questioned and contested North River and U.S. Fire's allocation, but paid the amounts billed to them subject to a full reservation of rights including the right to recoup their payment of the 2017 Reinsurance Billings whilst they were seeking further information and explanation from North River.

130.    Allianz Suisse and Delta Lloyd did not settle the 2017 Reinsurance Billings.

131.    Upon information and belief, Banco did not pay or settle any 2017 reinsurance billings billed to it under the JU Reinsurance Contracts.

### The Mediation in the Pennsylvania Federal Court Action

132.    After the trial in the Pennsylvania State Court Action, MSA began pursuing its claims in the Pennsylvania Federal Court Action under Policy No. JU01225.

133.    The Court in the Pennsylvania Federal Court Action directed MSA and North River to attempt to mediate their dispute.

134.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The Plaintiff Reinsurers did not receive this report until after that mediation session had occurred.

135.    North River and MSA were unable to settle during the course of this mediation session.

### The Delaware Court Rules Inconsistently With North River's Position
### on the Non-Cumulation Provisions

136.    In an opinion dated October 11, 2017, the Delaware Court rejected North River's position on how the non-cumulation provisions applied to the MSA Product Claims (the "2017

Non-Cumulation Ruling").  North River had relied on this same now-rejected non-cumulation position in allocating its 2017 loss settlement payments to MSA.

137.    The Delaware court held that the "non-cumulation clause [in the JU Policies] at issue . . . applies only where payment to a single claimant is in excess of policy limits."

138.    The 2017 Non-Cumulation Ruling was inconsistent with North River's position as it relates to the non-cumulation provisions and which position North River had relied on in allocating its payments that were the subject matter of its 2017 Reinsurance Billings.

139.    The 2017 Non-Cumulation Ruling was later reduced into a final judgment in the Delaware Court Action.

140.    The 2017 Non-Cumulation Ruling and judgment entered thereon have never been vacated withdrawn, or overturned on appeal.

141.    The 2017 Non-Cumulation Ruling and judgment entered thereon is a binding judgment with respect to all the JU Policies.

142.    North River is collaterally estopped from denying the legal effect of 2017 Non-Cumulation Ruling and judgment entered thereon with respect to its obligations under Policies No. JU00830, JU0988, and JU01123.

**North River Settles With MSA
and North River's 2018 Reinsurance Billings**

143.    After the Delaware Court's 2017 Non-Cumulation Ruling, ███████████████

████████████████████████████████████████████████

████████████████████████████

144.    Based upon information and belief, North River's settlement position changed as a result of the Delaware Court's 2017 Non-Cumulation Ruling.

145.     North River and MSA memorialized their settlement in a Confidential Settlement Agreement executed in July, 2018 (the "MSA Settlement").

146.     As the name suggests, the terms of the MSA Settlement are confidential.

147.     ███████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████.

148.     ███████████████████████████████████████████████
███████████████████████████.

149.     ███████████████████████████████████████████████
███████████████████████.

150.     In September, 2018, North River billed the JU Reinsurers, including the Plaintiff Reinsurers, for amounts North River contends they owe as a result of the MSA Settlement Payment. U.S. Fire also billed the U.S. Fire Reinsurers under the U.S. Fire Reinsurance Contract. Collectively, these are referred to herein as the "2018 Reinsurance Billings."

151.     According to North River's Billing Report, ███████████████████████
███████████████████████████████████████████████████████
████████████████████████.

152.     ███████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████.

153.     Based upon information and belief, North River's allocation of the bad faith settlement is not proper or reasonable in that, among other things, ███████████████████████

██████████████████████████████████████████████ and does not otherwise fully

account for North River's bad faith exposure as a result of the Bad Faith Award.

154.   ███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

155.   Under its application of these criteria, North River and U.S. Fire have allocated a

substantial share of the MSA Settlement Payment to the Higher Layer JU Policies and the U.S Fire

Policy than should have been allocated to those policies based upon the policy language, the law,

and the rulings against North River in the various MSA coverage actions.

156.   In their 2018 Reinsurance Billings, North River and U.S. Fire seek to recover for

some losses that did not occur during the specified period of reinsurance applicable to each

Reinsurance Contract.

157.   North River allocated the MSA Settlement Payment in a manner intended to

increase its and U.S. Fire's reinsurance recovery.

158.   North River allocated the MSA Settlement Payment to High Layer JU Policies and

the U.S. Fire Policy on which North River and U.S. Fire have more available reinsurance and

avoided allocating the MSA Settlement Payment to Lower Layer JU Policies where North River has

less available reinsurance.

159.   Under this approach, North River has allocated a substantial share of the MSA

Settlement Payment to High Layer JU Policies and the U.S. Fire Policy that are not properly

payable as loss under those policies.  Under a proper approach consistent with the policy language,

controlling law, and binding decisions rendered against North River in the MSA coverage actions, the allocation to the Higher Layer JU Policies and the U.S. Fire Policy would have been significantly less.

160.    North River's allocation is inconsistent with the court decisions and judgments applying the JU Policies to the facts of the MSA Product Claims.

161.    North River's application of the non-cumulation clause in the North River policies on a per-occurrence basis is inconsistent with the Delaware Court's 2017 Non-Cumulation Ruling.

162.    In its 2017 Non-Cumulation Ruling, the Delaware Court held that the non-cumulation clauses contained in some of the JU Policies did not apply on a per-occurrence basis.

163.    North River's allocation assumes that the non-cumulation clauses apply on a per occurrence basis which is contrary to the Delaware Court's 2017 Non-Cumulation Ruling which was later reduced to a final judgment.

164.    North River is bound by the Delaware Court's 2017 Non-Cumulation Ruling and can only apply the non-cumulation clauses on a per claimant basis.

165.    Applying the Delaware Court's 2017 Non-Cumulation Ruling to the allocation of the MSA Settlement Payment would eliminate the allocation of any indemnity to JU Policies No. JU00010, JU00158, and JU00171 entirely and would substantially reduce the allocation to JU Policy No. JU00157 and the U.S. Fire Policy.

166.    North River's allocation does not allocate any indemnity to JU Policies No. JU00830, JU00988, and JU1123.  This is inconsistent with the verdict and judgment entered against JU Policies No. JU00830, JU00988, and JU1123 in the Pennsylvania State Court Action and the Bad Faith Award against those policies in that same action.

167.    North River allocated the MSA Settlement Payment to the High Layer JU Policies and the U.S. Fire Policy despite that one of the primary coverage defenses was that MSA could not prove exhaustion of the underlying retentions.

168.    North River's allocation of the MSA Settlement Payment is inconsistent with the facts of the underlying MSA Product Claims, the terms of the North River insurance policies, the controlling law, the decisions rendered in the various coverage actions with MSA concerning the JU Policies and the representations that North River previously made to the Plaintiff Reinsurers.

169.    ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

170.    Underwriters, Allianz Suisse, and Delta Lloyd dispute the 2018 Reinsurance Billings and did not settle those billings.

171.    Tenecom, Winterthur, Sompo, and Berkshire disputed the 2018 Reinsurance Billings, but paid those billings subject to a full reservation of rights.  North River and U.S. Fire accepted these reinsurers' payment, but contend that the reinsurers cannot reserve their rights.

172.    Upon information and belief, Banco did not pay or settle any 2018 reinsurance billings billed to it under the JU Reinsurance Contracts.

**North River and U.S. Fire's Reinsurance Billings for Declaratory Judgment Expenses**

173.    After it assumed the defense of MSA's claims for coverage in 2010, North River began sending reinsurance bills to the Plaintiff Reinsurers claiming that the Plaintiff Reinsurers were obligated under the Reinsurance Contracts to pay a share of legal expenses and costs incurred in the various coverage actions with MSA involving the MSA Policies (the "Declaratory Judgment Expenses").

27

174.     The Plaintiff Reinsurers disputed that they were obligated to pay a share of Declaratory Judgment Expenses under the terms of the Reinsurance Contracts or pursuant to the parties' 2010 agreement and, alternatively, contended that any obligation that the Plaintiff Reinsurers might have to pay a share of Declaratory Judgment Expenses was subject to the limits of the Reinsurance Contracts.

175.     In 2018, North River and U.S Fire, on the one hand, and Underwriters, Tenecom, Winterthur, Sompo, and Berkshire, on the other, entered into a confidential settlement resolving their dispute concerning reinsurance billings for Declaratory Judgment Expenses under which Underwriters, Tenecom, Winterthur, Sompo, and Berkshire agreed to pay a certain sum without admission of liability.

176.     Allianz Suisse, and Delta Lloyd dispute that they are obligated to pay North River's and U.S. Fire's Declaratory Judgment Expenses and, alternatively, contend that any obligation they might have with respect to Declaratory Judgment Expenses is subject to the limits of the Reinsurance Contracts.

177.     In its 2017 Reinsurance Billings and 2018 Billings, North River and U.S. Fire are improperly seeking to recover from the Plaintiff Reinsurers for amounts in excess of the Sum Insured under each of the JU Reinsurance Contracts and the U.S. Fire Contract in view of their billings for Declaratory Judgment Expenses.

### COUNT I
### (Breach of Contract Against North River
### by Underwriters, Tenecom, Winterthur, Sompo, and Berkshire)

178.     Underwriters, Tenecom, Winterthur, Sompo, and Berkshire repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

179.     The JU Reinsurance Contracts are valid, binding, and enforceable contracts between the JU Reinsurers and North River.

180.     North River has allocated and presented its MSA Settlement Payment in a manner inconsistent with the terms of each of the JU Reinsurance Contracts, including, but not limited to, the requirement that the Loss must exceed the stated retention of each reinsurance contract and that such loss must have occurred during the specified period of reinsurance.

181.     North River's MSA Settlement and its allocation and presentation of the MSA Settlement Payment to the JU Reinsurers constitute material breaches of the JU Reinsurance Contracts.

182.     Underwriters, Tenecom, Winterthur, Sompo, and Berkshire have been damaged by North River's breach of contract.  Underwriters, Tenecom, Winterthur, Sompo, and Berkshire are entitled to recover their prior indemnity payment on account of the reinsurance billings as a result of North River's material breaches of the JU Reinsurance Contracts and such other contractual damages as they may prove.

183.     Further and alternatively, based on its material breaches of the JU Reinsurance Contracts, North River cannot enforce the terms of the JU Reinsurance Contracts.

WHEREFORE, Underwriters, Tenecom, Winterthur, Sompo, and Berkshire request judgment in their favor and against North River in an amount in excess of $200,000 together with interest, costs and such other relief as may be determined to be reasonable.

## COUNT II
### (Breach of Contract Against U.S. Fire by Underwriters and Winterthur)

184.     Underwriters and Winterthur repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

185.    The U.S. Fire Reinsurance Contract is a valid, binding, and enforceable contract between Underwriters and Winterthur and U.S. Fire.

186.    U.S. Fire, in conjunction with North River, has allocated and presented its MSA Settlement Payment in a manner inconsistent the terms of the U.S. Fire Reinsurance Contract, including, but not limited to, the requirement that the Loss must exceed the stated retention of the reinsurance contract and that such loss must have occurred during the specified period of reinsurance.

187.    U.S. Fire's MSA Settlement and its allocation and presentation of the MSA Settlement Payment to the U.S. Fire Reinsurers constitute material breaches of the U.S. Fire Reinsurance Contract.

188.    Underwriters and Winterthur have been damaged by U.S. Fire's breach of contract. Underwriters are entitled to recover their prior indemnity payment on account of the  reinsurance billings as a result of U.S. Fire's material breaches of the U.S. Fire Reinsurance Contract and such other contractual damages as they may prove.

189.    Further and alternatively, based on its material breaches of the U.S. Fire Reinsurance Contract, U.S. Fire cannot enforce the terms of the U.S. Fire Reinsurance Contract.

WHEREFORE, Underwriters and Winterthur request judgment in their favor and against U.S. Fire in an amount in excess of $200,000 together with interest, costs and such other relief as may be determined to be reasonable.

## COUNT III
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against North River by Underwriters, Tenecom, Winterthur, Sompo, Berkshire, and Delta Lloyd)

190.    The JU Reinsurers repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

191.    Pursuant to the JU Reinsurance Contracts, North River has an implied duty to deal with the JU Reinsurers fairly and in good faith.

192.    North River has acted unreasonably and not in good faith through its foregoing conduct, including, but not limited to, (a) its allocating a substantial part of the MSA Settlement Payment to Higher Layer JU Policies with more reinsurance when it had requested and assumed claims control based on its representation that it had more of the exposure for the MSA coverage claims because the Lower Layer JU Policies had less available, solvent reinsurance, (b) its allocating alleged Loss to the JU Reinsurance Contracts that occurred outside of the specified period of reinsurance of those contracts, (c) its allocating to the JU Policies in large part based on coverage positions expressly rejected by binding rulings against North River in the Delaware Coverage Action and the Pennsylvania State Court Action, (d) its ignoring the retentions of the JU Reinsurance Contracts, (e) its repeated representation to reinsurers that the Lower Layer JU Policies had the main exposure for the MSA coverage claims, whilst subsequently allocating in a manner inconsistent with those representations, (f) its billing for amounts in excess of the JU Reinsurance Contracts' Sum Insured amounts, and (g) representing that the amount allocated to its exposure from the Bad Faith Award ███████████████████████████████████ ███████████████████████████████ and otherwise failing to fully account for North River's bad faith exposure as a result of the Bad Faith Award.

193.    North River's conduct as described herein constitutes a breach of its implied duty to deal with the JU Reinsurers fairly and in good faith.

194.    The JU Reinsurers have been damaged by North River's bad faith conduct in an amount to be determined by the trier of fact.

WHEREFORE, the JU Reinsurers request judgment in their favor and against North River in an amount in excess of $200,000 together with interest, costs and such other relief as may be determined to be reasonable.

### COUNT IV
**(Breach of Implied Covenant of Good Faith and Fair Dealing Against U.S. Fire
by Underwriters, Winterthur, Allianz Swiss, and Delta Lloyd)**

195.     Underwriters, Allianz Swiss, Winterthur, and Delta Lloyd, the U.S. Fire Reinsurers, repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

196.     Pursuant to the U.S. Fire Reinsurance Contract, U.S. Fire has an implied duty to deal with U.S. Fire Reinsurers fairly and in good faith.

197.     U.S. Fire has acted unreasonably and not in good faith through its foregoing conduct, including, but not limited to, (a) its allocating a substantial part of the MSA Settlement Payment to U.S. Fire Policy in large part based on coverage positions expressly rejected by binding rulings against North River in the Delaware Coverage Action and the Pennsylvania State Court Action, (b) its allocating alleged Loss to the JU Reinsurance Contracts that occurred outside of the specified period of reinsurance of those contracts, (c) its ignoring the retentions of the U.S. Fire Contract, (d) its repeated representation to reinsurers that the Lower Layer JU Policies had the main exposure for the MSA coverage claims, whilst subsequently allocating in a manner inconsistent with those representations, (e) its billing for amounts in excess of the U.S. Fire Reinsurance Contract's Sum Insured amount, and (f) ██████████████████████████████ ████████████████████ and otherwise failing to fully account for North River's bad faith exposure as a result of the Bad Faith Award.

198.     U.S. Fire's conduct as described herein constitutes a breach of its implied duty to deal with the U.S. Fire Reinsurers fairly and in good faith.

199.    The U.S. Fire Reinsurers have been damaged by U.S. Fire's bad faith conduct in an amount to be determined by the trier of fact.

WHEREFORE, the U.S. Fire Reinsurers request judgment in their favor and against U.S. Fire in an amount in excess of $200,000 together with interest, costs and such other relief as may be determined to be reasonable.

### COUNT V
### (Declaratory Judgment under the JU Reinsurance Contracts
### by Underwriters, Tenecom, Winterthur, Sompo, Berkshire, and Delta Lloyd)

200.    The JU Reinsurers repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

201.    There is an actual controversy between JU Reinsurers and Defendant North River as to their respective rights and liabilities under the JU Reinsurance Contracts.

202.    Banco is a reinsurer under the JU Reinsurance Contract No. UU27678.  To the extent Banco disputes its or the JU Reinsurers' rights and obligations under the JU Reinsurance Contracts as alleged in this Complaint, the JU Reinsurers are entitled to declaratory relief against Banco concerning those rights and obligations.

203.    The JU Reinsurers are not obligated under the JU Reinsurance Contracts to pay North River's 2017 Reinsurance Billings or 2018 Reinsurance Billings because North River's allocation and presentation of the MSA Settlement Payment is not legitimate, credible, objectively reasonable, or presented in good faith.

204.    Alternatively, the JU Reinsurers are not obligated under the JU Reinsurance Contracts to pay North River's 2017 Reinsurance Billings or 2018 Reinsurance Billings because North River's bad faith conduct towards MSA gave rise to the underlying liability in whole or in part and because of North River's bad faith conduct towards the JU Reinsurers.

205.    The JU Reinsurance Contracts also do not obligate the JU Reinsurers to indemnify North River for its payments purportedly in indemnification of MSA where North River has failed to prove that the Losses under the reinsured contracts.

206.    The JU Reinsurance Contracts only obligate the JU Reinsurers to indemnify North River for losses occurring only during the period of reinsurance and the JU Reinsurers have no obligation to indemnify North River for payments purportedly in indemnification of MSA for losses that occurred before or after the period of reinsurance.

207.    To the extent North River has paid claims under MSA Policies where it was not obligated to do so, the JU Reinsurance Contracts do not obligate the JU Reinsurers to indemnify North River for such payments.

208.    To the extent that the MSA Settlement Payment is in payment of future claims for which North River did not have a current obligation under the JU Policies, the JU Reinsurers are not obligated to indemnify North River for such payment.

209.    To the extent that North River failed to properly account fully for the Bad Faith Award in its allocation of the MSA Settlement Payment, ███████████████████████ ██████████████ the JU Reinsurers are not obligated to pay any part of the MSA Settlement Payment that is properly attributable to North River's bad faith conduct.

210.    Alternatively, the JU Reinsurance Contracts limit the JU Reinsurers' obligation to pay no more than their share of the Sum Insured specified in the slips of each MSA Reinsurance Contract including payments to address North River's exposure for: (i) Declaratory Judgment Expenses as a result of coverage litigation against MSA; (ii) legal expenses sustained by MSA as a result of MSA Product Claims; or (iii) bad faith damages arising from the North River Bad Faith Award.

WHEREFORE, the JU Reinsurers request judgment in their favor and against North River and Banco, with the Court entering an order declaring as follows:

A.     The JU Reinsurers are not obligated to indemnify North River on account of the MSA Settlement Payment under the JU Reinsurance Contracts;

B.     The JU Reinsurers are not obligated to pay the reinsurance billings;

C.     Tenecom, Winterthur, Sompo, and Berkshire are entitled to recoup the amounts that they paid, subject to a full reservation of rights, on account of the 2018 Reinsurance Billings;

D.     Underwriters, Tenecom, Winterthur, Sompo, and Berkshire, are entitled to recoup the amounts that they paid, subject to a full reservation of rights, on account of 2017 Reinsurance Billings;

E.     The JU Reinsurers are not obligated to indemnify North River on account of any loss that does not exceed the stated retention of any of the individual JU Reinsurance Contracts or loss that did not occur during the specified period of reinsurance of any of the individual JU Reinsurance Contracts;

F.     The JU Reinsurers are not obligated to make any payments to North River in connection with the North River Bad Faith Award as such payments are not covered by the JU Reinsurance Contracts;

G.     Alternatively, the JU Reinsurers are not obligated to make any payments to North River beyond their share of the stated Sum Insured appearing in each of the JU Reinsurance Contracts.

The JU Reinsurers further request the Court order such other proper and appropriate remedies, costs and fees, as it deems proper and just.

### COUNT VI
**(Declaratory Judgment under the U.S. Fire Reinsurance Contract
by Underwriters, Winterthur, Allianz Swiss, and Delta Lloyd)**

211.    The U.S. Fire Reinsurers repeat and reallege the allegations set forth in paragraphs 1 through 177 as though fully set forth herein.

212.    There is an actual controversy between the U.S. Fire Reinsurers and Defendant U.S. Fire as to their respective rights and liabilities under the U.S. Fire Reinsurance Contract.

213.    The U.S. Fire Reinsurers are not obligated under the U.S. Fire Reinsurance Contract to pay U.S. Fire's 2017 Reinsurance Billings or 2018 Reinsurance Billings because North River's allocation and presentation of the MSA Settlement Payment is not legitimate, credible, objectively reasonable or presented in good faith.

214.    Alternatively, the U.S. Fire Reinsurers are not obligated under the U.S. Fire Reinsurance Contract to pay U.S. Fire's 2017 Reinsurance Billings or 2018 Reinsurance Billings because North River and U.S. Fire's bad faith conduct towards MSA gave rise to the underlying liability in whole or in part and because of North River's bad faith conduct to the U.S. Fire Reinsurers.

215.    The U.S. Fire Reinsurance Contract also does not obligate the U.S. Fire Reinsurers to indemnify North River for its payments purportedly in indemnification of MSA where U.S. Fire has failed to prove that the Losses under the reinsured contracts.

216.    The U.S. Fire Reinsurance Contract only obligates the U.S. Fire Reinsurers to indemnify U.S. Fire for losses occurring only during the period of reinsurance and the U.S. Fire Reinsurers have no obligation to indemnify U.S. Fire for payments purportedly in indemnification of MSA for losses that occurred before or after the period of reinsurance.

217.    To the extent North River has paid claims under MSA Policies where it was not obligated to do so, the U.S. Fire Reinsurance Contract does not obligate the U.S. Fire Reinsurers to indemnify U.S. Fire for such payments.

218.    To the extent that the MSA Settlement Payment is in payment of future claims for which U.S. Fire did not have a current obligation under the U.S. Fire policy, the U.S. Fire Reinsurers are not obligated to indemnify U.S. Fire for such payment.

219.    To the extent that North River failed to properly account fully for the Bad Faith

Award in its allocation of the MSA Settlement Payment, ███████████████████████████

██████████████ the U.S. Fire Reinsurers are not obligated to pay any part of the MSA Settlement

Payment that is properly attributable to North River's bad faith conduct.

220.    Alternatively, the U.S. Fire Reinsurance Contract limits the U.S. Fire Reinsurers'

obligation to pay no more than their share of the Sum Insured specified in the slips of each U.S. Fire

Reinsurance Contract including payments to address exposure for: (i) Declaratory Judgment

Expenses as a result of coverage litigation against MSA; (ii) legal expenses sustained by MSA as a

result of MSA Product Claims; or (iii) bad faith damages arising from the North River Bad Faith

Award.

WHEREFORE, the U.S. Fire Reinsurers request judgment in their favor and against North

River, with the Court entering an order declaring as follows:

A.    The U.S. Fire Reinsurers are not obligated to indemnify U.S. Fire on account of the
MSA Settlement Payment under U.S. Fire Reinsurance Contract;

B.    The U.S. Fire Reinsurers are not obligated to pay the reinsurance billings;

C.    Winterthur is entitled to recoup the amounts that it paid, subject to a full reservation
of rights, on account of the 2018 Reinsurance Billings;

D.    Underwriters and Winterthur are entitled to recoup the amounts that they paid,
subject to a full reservation of rights, on account of 2017 Reinsurance Billings;

E.    The U.S. Fire Reinsurers are not obligated to indemnify U.S. Fire on account of any
loss that does not exceed the stated retention of the U.S. Fire Reinsurance Contract
or loss that did not occur during the specified period of reinsurance of the U.S. Fire
Reinsurance Contract;

F.    The U.S. Fire Reinsurers are not obligated to make any payments to North River in
connection with the North River Bad Faith Award as such payments are not covered
by the JU Reinsurance Contracts;

G.    Alternatively, U.S. Fire Reinsurers are not obligated to make any payments to North River beyond their share of the stated Sum Insured appearing in each of the JU Reinsurance Contracts.

The U.S. Fire Reinsurers further request the Court order such other proper and appropriate remedies, costs and fees, as it deems proper and just.

## JURY DEMAND

The Plaintiff Reinsurers demand a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify pursuant to *R.* 4:5-1 that the subject matter of this action is also the subject matter of a civil action pending in the United States District Court for the District of New Hampshire styled as *U.S. Fire Ins. Co. et al. v. Equitas Ins. Ltd. et al.*, Civil Action No. 1:18-cv-01205-LM and that the New Hampshire Court is aware of this action and this court's order of August 2, 2019. I further certify that I am unaware of any non-party who should be joined in this action pursuant to *R.* 4:28 or who is subject to joinder pursuant to *R.* 4:29-1(b) because of potential liability to any party based on the same transactional facts.

## <u>CERTIFICATION PURSUANT TO R. 4:5-1(b)(3)</u>

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *R*. 1:37-7(b).

*/s/ Elizabeth J. Sher*
Elizabeth J. Sher, Esq.

DATED:  August 13, 2019

39

## DESIGNATION OF TRIAL COUNSEL

   Pursuant to *R.* 4:25-4, plaintiff designates Elizabeth J. Sher, Esq., and Joseph K. Scully, *pro hac vice*, Members of the firm of Day Pitney LLP, as trial counsel in this action.

          **PLAINTIFFS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("UNDERWRITERS"), LONDON, TENECOM LIMITED F/K/A YASUDA FIRE & MARINE INSURANCE COMPANY (UK) LIMITED, WINTERTHUR SWISS INSURANCE COMPANY, SOMPO HOLDINGS, INC. F/K/A SOMPO JAPAN INSURANCE, INC. F/K/A NISSAN FIRE & MARINE INSURANCE COMPANY, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY F/K/A STONEWALL INSURANCE COMPANY, ALLIANZ SUISSE VERSICHERUNGS-GESELLSCHAFT f/k/a HELVETIA ACCIDENT SWISS INSURANCE COMPANY, and DELTA LLOYD SCHADEVERZEKERING NV**

          By its attorney,

          */s/ Elizabeth J. Sher*
          Elizabeth J. Sher
          *esher@daypitney.com*
          Day Pitney LLP
          1 Jefferson Road
          Parsippany, NJ  07054
          (973) 966-8214
          (973) 210-8535 (fax)

DATED:  August 13, 2019

**APPENDIX A**

| MSA Policy No. | Under-writers | Tenecom | Winterthur | Sompo | Berkshire | Allianz Suisse | Delta Lloyd |
|---|---|---|---|---|---|---|---|
| **Lower Layer JU Policies** | | | | | | | |
| JU0139 | 23.1780% of $3.75M part of $5M | 5.2350% of $3.75M part of $5M | .6930% of $3.75M part of $5M | 1.9870% of $3.75M part of $5M | 0% | 0% | 0% |
| JU0653 | 0% | 0% | 12.9900% of $5.25M part of $15M | 0% | 0% | 0% | 0% |
| JU0830 | 9.0909% of $8M part of $10M part of $20M | 0% | 11.4466% of $8M part of $10M part of $20M | 0% | 0% | 0% | 0% |
| JU0988 | 10.5260% of $8M part of $10M part of $20M | 0% | 7.9210% of $8M part of $10M part of $20M | 0% | 0% | 0% | 0% |
| JU1123 | 10.5260% of $8M part of $10M part of $20M | 0% | 7.9210% of $8M part of $10M part of $20M | 0% | 0% | 0% | 0% |
| JU1225 | 15.2680% of $13M part of $20M | 1.5270% | 6.5650% of $13M part of $20M | 0% | 0% | 0% | 0% |
| JU1319 | 0% | 1.4820% of $13M part of $20M | 0% | 0% | 0% | 0% | 0% |

| MSA Policy No. | Under-writers | Tenecom | Winterthur | Sompo | Berkshire | Allianz Suisse | Delta Lloyd |
|---|---|---|---|---|---|---|---|
| **Higher Layer JU Policies** | | | | | | | |
| JU0157 | 41.0850% of $8M part of $10M | 5.9010% of $8M part of $10M | 1.1870% of $8M part of $10M | 1.87% of $8M part of $10M | 0% | 0% | 0% |
| JU0171 | 96.2960% of $2M part of $10M | 0% | 0% | 0% | 0% | 0% | 0% |
| JU0010 | 61.1880% of $13,000,500 part of $15M | 0% | 0% | 0% | 7.6430% of $13,000,500 part of $15M | 0% | 0.2960% of $13,000,500 part of $15M |
| JU0158 | 65.5010% of $10.75M part of $12.75M part of $15M | 0.9560% of $10.75M part of $12.75M part of $15M | 0.5250% of $10.75M part of $12.75M part of $15M | 0.69% of $10.75M part of $12.75M part of $15M | 0% | 0% | 0% |
| **U.S. Fire Policy** | | | | | | | |
| XS2526 | 45.5000% of $10M | 0% | 0.553% | 0% | 0% | 5.0000% of $10M | 0.7370% of $10M |

2

DAY PITNEY LLP
ONE JEFFERSON ROAD
PARSIPPANY, NJ 07054
(973) 966-6300
by Elizabeth J. Sher
Attorney I.D. No. 0306181983

Attorneys for Plaintiffs

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, TENECOM LIMITED f/k/a YASUDA FIRE & MARINE INSURANCE COMPANY (UK) LIMITED, WINTERTHUR SWISS INSURANCE COMPANY, SOMPO HOLDINGS, INC. f/k/a SOMPO JAPAN INSURANCE, INC. f/k/a NISSAN FIRE & MARINE INSURANCE COMPANY, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY f/k/a STONEWALL INSURANCE COMPANY, ALLIANZ SUISSE VERSICHERUNGS-GESELLSCHAFT f/k/a HELVETIA ACCIDENT SWISS INSURANCE COMPANY, and DELTA LLOYD SCHADEVERZEKERING NV | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY<br><br>Docket No.: MRS-L-2505-18<br><br>Civil Action<br><br>**ACKNOWLEDGMENT OF SERVICE** |

Plaintiffs,

-against-

THE NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and BANCO DE SEGUROS DEL ESTADO

Defendants.

On behalf of Defendant, Banco de Seguros del Estado, the undersigned hereby acknowledges and accepts service of the Second Amended Complaint and the Summons with regard to the above-referenced matter on the date set forth below.

103450584.1

Mark Kreger, Esq.
Karbal, Cohen, Economou, Silk & Dunne, LLC
150 S Wacker Drive, Floor 17
Chicago, IL 60606

Dated:  August  14 2019